**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **CODY HUBBARD, individually and on behalf of similarly situated individuals** | § | |
| **Plaintiff** | § | |
| **v.** | § | **CIVIL ACTION NO. 7:26-cv-00189** |
| **CONSOLIDATED WELLSITE SERVICES LLC** | § | |
| **Defendant** | § | |

## COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiff Cody Hubbard ("Plaintiff" or "Hubbard"), individually and on behalf of all others similarly situated, by and through his attorney, brings this action against Defendant Consolidated Wellsite Services LLC ("Defendant") seeking unpaid wages, including overtime wages, and all other available relief under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq* ("FLSA") and the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-19, *et seq*. ("NMMWA")

Based on personal knowledge of his own conduct and upon information and belief as to the conduct and acts of others, Plaintiff alleges as follows:

## I. PARTIES

1. Plaintiff Cody Hubbard is an adult resident of Arkansas. Plaintiff consents in writing to be a party to this collective action pursuant to 29 U.S.C. § 216(b). A Consent to Join form signed by Plaintiff is attached hereto as Exhibit A.

2. At all relevant times, Defendant employed Plaintiff as an hourly, non-exempt Snubber.

3. Plaintiff and other similarly situated employees regularly worked more than 40

hours per workweek.

4. Plaintiff and other similarly situated employees are covered employees within the meaning of the FLSA.

5. Defendant Consolidated Wellsite Services, LLC ("Defendant" or "CWS") is a Texas Limited Liability Company. Upon information and belief, CWS's principal place of business is located at 12720 W. County Rd. 91, Midland, TX 79707. Defendant may be served through its registered agent, Joseph DeMartin, at 104 Metrolex Drive, Haslet, Texas 76052, or wherever he may be found.

6. At all relevant times, Defendant was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d); an "enterprise" within the meaning of the FLSA, 29 U.S.C. § 203(r); and an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

7. At all relevant times, Plaintiff and similarly situated individuals were Defendant's "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e).

8. Defendant applies the same employment policies, practices, and procedures to all Operators, Snubbing Operator, Lead Hand, Ground Hand, Basket Hand, Roughneck, Tong Hand, and Green Hats (collectively, "Snubbers").

## II. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the claims in this complaint pursuant to 28 U.S.C. § 1332(d) because (1) this case involves a plaintiff who resides in Arkansas; (2) Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to 29 U.S.C. §216(b).

10. At all times material to this Complaint, Defendant had employees who have

regularly sold, handled, or otherwise worked on goods and/or materials that had been moved in or produced for commerce.

11. Defendant's gross annual sales volume was in excess of $500,000.00 per annum at all times material hereto.

12. At all times material to this Complaint, Defendant was an enterprise engaged in interstate commerce or in the production of goods for commerce as defined by the FLSA, 29 U.S.C. § 203(s).

13. This case raises a federal question under 29 U.S.C. § 216(b), giving this Court original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

14. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the federal question claims that they form part of the same case or controversy.

15. Plaintiff's state law claims are not novel or complex. 28 U.S.C. § 1367(c)(1).

16. Plaintiff's state law claims do not predominate over their federal question claims. 28 U.S.C. § 1367(c)(2).

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(1) because Defendant conducts substantial business in this District, sending Plaintiff and Snubbers to perform work in this District while subjecting them to Defendant's improper and illegal payroll practices.

## III. APPLICABLE STATE LAW

18. The "New Mexico Wage Laws" refers to the New Mexico Minimum Wage Act ("NMMWA"), NMSA § 50-4-19, *et seq*.

## IV. FACTUAL ALLEGATIONS

19. Defendant CWS provides snubbing services to their customers in multiple states,

including Texas, New Mexico, and Oklahoma.

20. During the relevant period, Defendant employed Plaintiff and other Operators, Snubbing Operator, Lead Hand, Ground Hand, Basket Hand, Roughneck, Tong Hand, and Green Hats (collectively "Snubbers") to perform work in those states.

21. At all relevant times, Defendant employed Plaintiff and similarly situated individuals as non-exempt employees.

22. Snubbers performed the manual tasks associated with Defendant's onsite snubbing services.

23. Defendant paid Plaintiff and Snubbers on an hourly basis.

24. During the relevant period, Defendant regularly scheduled Plaintiff and Snubbers to work out of town on multi-week assignments referred to as "Hitches."

25. The average scheduled duration of each hitch is at least 7 days, but Defendant requires the Plaintiffs and Snubbers to work as many weeks as required. The hitch is followed 14 days off but that is frequently shortened due to business needs. Although Defendant frequently changed schedules, resulting in longer hitches and shorter periods of time off.

24. At the conclusion of the hitch, Plaintiff and the Snubbers would spend one (1) travel day to travel back to their hometown. This pattern of repeated long-distance travel was part of their regular work schedule.

25. Plaintiff and Snubbers were required to report to remote job sites to perform Defendant's snubbing operations services for customers in various states. These job sites were frequently located hundreds of miles away from Snubbers' home communities.

26. Plaintiff and Snubbers typically work at least forty (40) hours per workweek. Snubbers typically worked multiple-day shifts away from their home communities. Because the

worksites were away from their home communities, Plaintiff and Snubbers typically stayed overnight in company provided lodging during the scheduled work rotations.

27. Plaintiff and Snubbers spent substantial time before and after their work rotations driving or flying hundreds of miles to and from job sites. This travel regularly cut across Snubbers' normal working hours during both regular working days and non-working days.

28. The identity of all similarly situated Snubbers is unknown at this time but is known to Defendant and is contained in Defendant's records.

29. Defendant did not count compensable travel time as hours worked for purposes of determining overtime eligibility. Consequently, Defendant failed to pay proper wages, including overtime wages, to Plaintiff and other similarly situated individuals.

30. Defendant assigned Plaintiff and Snubbers to work shifts that were typically over twelve hours, however, Plaintiff and Snubbers often worked longer hours each shift.

31. Defendant required Plaintiff and Snubbers to arrive at the job site before the scheduled start of each shift.

32. Defendant required Plaintiff and Snubbers to arrive approximately one (1) hour before the scheduled start of their scheduled shift.

33. Upon arrival at the job site, Plaintiff and Snubbers were required to don personal protective equipment and attend mandatory pre-shift meetings before they can start working.

34. Defendant required Plaintiff and Snubbers were to attend a Pre-Shift or Cross-Shift meeting before each shift, which were typically held at approximately 30 minutes before each shift.

35. Pre-Shift and Cross-Shift meetings were required by Defendant and, in some instances, by Defendant's customers.

36. Defendant did not compensate Plaintiff and Snubbers for time spent donning required workwear and personal protective equipment before the start of their shift.

37. Defendant did not compensate Plaintiff and Snubbers for time spent attending mandatory pre-shift meetings.

38. Defendant did not compensate Plaintiff and Snubbers for time spent attending required pre-shift or cross-shift meetings.

39. Defendant only tracked or paid for the time the Plaintiff and Snubbers spent working on their assigned shift.

40. Defendant did not provide Plaintiff and Snubbers to clock in and out or any way for them to personally track their hours.

41. Defendant relied on the supervisors at the job site to track the hours worked by the Plaintiff and Snubbers.

42. Defendant did not track the actual number of hours Plaintiff and Snubbers worked each day.

43. Defendant typically paid Plaintiff and Snubbers for twelve (12) hours for each day worked, regardless of whether Plaintiff and Snubbers worked additional hours before, during, or after their scheduled shifts.

44. Defendant did not record the time Plaintiff and Snubbers spent traveling between company-provided lodging and the job site, time spent waiting for transportation, or time spent attending pre-shift or cross-shift meetings.

45. As a result of these practices, Plaintiff and Snubbers worked hours that were not recorded or compensated.

46. At all material times, Defendant willfully deprived Plaintiff and Snubbers of proper

wages, including overtime wages.

47. Defendant knew that Plaintiff and Snubbers were working overtime hours and hours for which they were not compensated at an overtime rate when they traveled to job sites.

48. The exact amount of compensation, including overtime compensation, that Defendant has failed to pay Plaintiff and other similarly situated individuals is unknown at this time.

49. The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records.

50. Defendant did not make, keep, or preserve accurate records of the hours worked by Plaintiff and Snubbers.

51. Defendant's unlawful conduct has been widespread, repeated, and uniform.

52. Defendant's conduct was willful and in bad faith and has caused significant damage to Plaintiff and Snubbers.

53. Plaintiff worked for Defendant in Texas, New Mexico, and Oklahoma.

54. Snubbers worked for Defendant in New Mexico, Oklahoma, Texas, and potentially other states.

55. Upon information and belief, prior to departing for each hitch, Defendant required Plaintiff and the Snubbers to report to CWS's yard located in Texas (the "Yard").

56. At the Yard, Plaintiff and the Snubbers were required to perform work-related tasks, including loading equipment and supplies, receiving work assignments, and completing pre-departure safety and operational briefings before departing for out-of-town job sites.

57. From the Yard, Plaintiff and the Snubbers were required to travel to job sites located in New Mexico, Oklahoma, Texas, and potentially other states, often hundreds of miles from the

Yard.

58. This travel from the Yard to the job sites was undertaken entirely for the benefit of Defendant, was directed and controlled by Defendant, and was a required condition of Plaintiff's and the Snubbers' employment.

59. The travel from the Yard to the job sites was not an ordinary commute from home to a fixed worksite. Rather, it constituted compensable travel under the FLSA because: (a) it departed from a required employer-designated assembly point; (b) it occurred during or cut across the normal working hours of Plaintiff and the Snubbers; and (c) Plaintiff and the Snubbers had no choice but to undertake this travel as directed by Defendant in order to perform their job duties.

60. This travel frequently lasted several hours in each direction and, when combined with all other hours worked during the workweek, regularly caused Plaintiff and the Snubbers to work in excess of forty (40) hours in a workweek.

61. Defendant did not record, track, or compensate Plaintiff and the Snubbers for any time spent traveling between the Midland Yard and the out-of-town job sites.

62. Defendant's failure to count and compensate travel time between the Yard and the job sites as hours worked resulted in the underpayment of wages, including overtime wages, to Plaintiff and the Snubbers.

63. Upon arrival at each job site, Plaintiff and the Snubbers were required to perform rig up operations before the snubbing unit became operational. Rig up involved the physical assembly, inspection, and preparation of the snubbing unit and associated equipment necessary to commence operations.

64. Rig-up activities included but were not limited to assembling and connecting snubbing equipment, pressure-testing equipment, rigging safety systems, reviewing job parameters

with supervisors, and ensuring the worksite was prepared to receive operations.

65. At the conclusion of operations at each job site, Plaintiff and the Snubbers were required to perform rig down operations. Rig down involved the systematic disassembly, inspection, securing, and loading out of the snubbing unit and associated equipment.

66. Rig down activities included but were not limited to breaking down and disconnecting the snubbing unit, inspecting and storing equipment, completing field documentation, and preparing the equipment for transport to the next job site.

67. Rig up and rig down activities were required by Defendant, were performed exclusively for Defendant's benefit, and were a mandatory and integral part of Plaintiff's and the Snubbers' job duties.

68. Rig up and rig down activities each required substantial time to complete, typically several hours.

69. Defendant's timekeeping and payroll practices only recorded and compensated Plaintiff and the Snubbers, beginning when the snubbing unit was operational and running (i.e., after rigging up was complete) and ending when active snubbing operations ceased (i.e., before rig down began).

70. Defendant did not record or compensate Plaintiff and the Snubbers for any time spent performing rig up or rig down activities, regardless of how long those activities took.

71. As a result, Plaintiff and the Snubbers regularly performed hours of compensable work each day for which they received no compensation.

72. Defendant's practice of excluding rig up and rig down time from hours worked caused Plaintiff and the Snubbers to be underpaid for their actual hours of labor and, when combined with all other uncompensated time, resulted in unpaid minimum wages and unpaid

overtime wages.

73. In addition to hourly wages, Defendant paid a daily bonus (the "Day Bonus") to Snubbers, including Plaintiff, for each shift they completed during which their name appeared on the field job ticket.

74. The Day Bonus was a fixed, predetermined amount paid per shift worked. At relevant times, the Day Bonus was a few hundred dollars per day.

75. The actual Day Bonus amount was fixed at the hiring of each Snubber.

76. The Day Bonus was not paid at management's unfettered discretion. Rather, it was paid automatically and consistently whenever a predefined, objective condition was met: the employee’s name appearing on the job ticket for that shift.

77. The Day Bonus was a standard feature of Snubbers' compensation, was expected by Snubbers, and was paid pursuant to Defendant's uniform company-wide policy and practice.

78. Because the Day Bonus was paid based on predetermined, objective criteria, and not at the sole, unilateral discretion of Defendant, it constitutes nondiscretionary compensation under the FLSA and applicable regulations. *See* 29 C.F.R. § 778.208; 29 C.F.R. § 778.211.

79. Under the FLSA, an employee's "regular rate" of pay includes all remuneration for employment paid to or on behalf of the employee, except for specific statutory exclusions. 29 U.S.C. § 207(e). Nondiscretionary bonuses are not among those exclusions and must be included in the regular rate. 29 C.F.R. § 778.208.

80. Defendant, however, did not include the Day Bonus when calculating the regular rate of pay for Plaintiff and Snubbers. Instead, Defendant calculated overtime based solely on base hourly rate, excluding the Day Bonus entirely.

81. As a result, when Plaintiff and Snubbers worked more than forty (40) hours in a

workweek, Defendant paid overtime at a rate that was artificially deflated rather than at one and one-half times the true regular rate as required by 29 U.S.C. § 207(a)(1).

82. Because of this practice, Plaintiff and Snubbers received less overtime compensation than they were legally entitled to receive during every workweek in which they worked more than forty (40) hours and received a Day Bonus.

83. This regular-rate underpayment is a uniform, company-wide practice that affected all Snubbers who received a Day Bonus and worked overtime during the relevant period.

84. Defendant knew, or showed reckless disregard for the fact, that excluding the Day Bonus from the regular rate violated the FLSA.

## V. FIRST CAUSE OF ACTION: FLSA OVERTIME — FAILURE TO PAY OVERTIME FOR ALL HOURS WORKED

**(29 U.S.C. § 207) On Behalf of Plaintiff and the FLSA Collective[1]**

85. Plaintiff hereby repeats, realleges, and incorporates by reference each of the foregoing allegations as if fully set forth herein.

86. At all times relevant to this action, Plaintiff and other similarly situated Snubbers were employed by Defendant as non-exempt employees within the meaning of the FLSA. 29 U.S.C. §§ 203(e), 203(r), 207(a).

87. The FLSA requires employers to compensate non-exempt employees at a rate of one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of forty (40) in a workweek. 29 U.S.C. § 207(a)(1).

88. Defendant violated the FLSA by failing to count, and therefore failing to pay Plaintiff and the FLSA Collective for the following categories of compensable work time:

a. Out-of-town travel time that cut across Snubbers' normal working hours and required overnight stays away from their home communities, constituting

[1] The FLSA Collective is defined in paragraph 107 below.

compensable travel time under 29 C.F.R. § 785.39;

b. Time spent attending mandatory pre-shift meetings beginning 30 minutes before each scheduled shift start each day, which were integral and indispensable to Snubbers' principal work activities;

c. Time spent donning and doffing required personal protective equipment and work uniforms before and after each shift, which was integral and indispensable to Snubbers' principal work activities.

89. Defendant's Supervisors at each job site controlled Snubbers' timekeeping, clocking Snubbers in and out through supervisors rather than permitting Snubbers to record their own hours. This practice enabled Defendant to systematically exclude compensable time from Snubbers' recorded hours.

90. Defendant's failure to pay Plaintiff and the FLSA Collective overtime for all hours worked was willful and in reckless disregard of its obligations under the FLSA.

91. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the FLSA Collective have suffered damages in the form of unpaid wages, including unpaid overtime compensation.

92. Plaintiff and the FLSA Collective are entitled to recover: (i) unpaid overtime wages; (ii) an equal amount as liquidated damages; (iii) reasonable attorneys' fees and costs; and (iv) pre- and post-judgment interest. 29 U.S.C. § 216(b).

## VI. SECOND CAUSE OF ACTION: FLSA OVERTIME — FAILURE TO PAY OVERTIME AT THE PROPER RATE

**(29 U.S.C. §§ 207, 207(e)) On Behalf of Plaintiff and the FLSA Collective**

93. Plaintiff hereby repeats, realleges, and incorporates by reference each of the foregoing allegations as if fully set forth herein.

94. The Fair Labor Standards Act requires employers to pay non-exempt employees overtime compensation at a rate of one and one-half (1.5) times the employee's regular rate of

pay for all hours worked in excess of forty (40) hours in a workweek. 29 U.S.C. § 207(a)(1).

95. An employee's "regular rate" of pay includes all remuneration for employment paid to, or on behalf of, the employee, except for payments specifically excluded by statute. 29 U.S.C. § 207(e); 29 C.F.R. § 778.109.

96. Nondiscretionary bonuses, those paid pursuant to objective, predetermined criteria without individualized managerial discretion, must be included in the regular rate of pay. 29 C.F.R. §§ 778.208, 778.211.

97. During the relevant period, Defendant paid certain Snubbers additional compensation in the form of a Daily Bonus at a fixed rate per day worked, the specific amount of which varied by plaintiff and opt-in. This bonus was paid pursuant to objective, predetermined conditions and was not subject to individualized managerial discretion; it was therefore nondiscretionary within the meaning of the FLSA.

98. The Daily Bonus was paid automatically when the applicable conditions were met and did not depend on subjective evaluation or individualized approval.

99. Despite paying this nondiscretionary compensation, Defendant systematically excluded the Daily Bonus from Snubbers' regular rate of pay when calculating overtime compensation, resulting in overtime pay at rates lower than those required by the FLSA.

100. Defendant's exclusion of nondiscretionary bonuses from the regular rate was carried out pursuant to a uniform and companywide policy and practice.

101. Defendant knew, or showed reckless disregard for the fact, that nondiscretionary bonuses must be included in the regular rate for purposes of calculating overtime compensation.

102. Defendant was further placed on actual notice of its obligations under the FLSA through prior litigation challenging similar pay practices yet continued its unlawful conduct.

103. As a direct and proximate result of Defendant's unlawful regular rate calculations, Plaintiff and the FLSA Collective have been underpaid overtime compensation throughout the relevant period.

104. Plaintiff and the FLSA Collective are entitled to recover: (i) unpaid overtime wages resulting from the improper exclusion of nondiscretionary bonuses from the regular rate; (ii) an equal amount as liquidated damages; (iii) reasonable attorneys' fees and costs; and (iv) pre- and post-judgment interest. 29 U.S.C. § 216(b).

105. Alternatively, should the Court find that Defendant acted in good faith in failing to pay Plaintiff as provided by the FLSA, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate.

## VII. COLLECTIVE ACTION ALLEGATIONS

106. Plaintiff, on behalf of himself and other similarly situated individuals, re-alleges and incorporate by reference the above paragraphs as if fully set forth herein.

107. Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to the FLSA, 29 U.S.C. § 216(b). The proposed "FLSA Collective" is defined as follows:

> All Operators, Snubbing Operator, Lead Hand, Ground Hand, Basket Hand, Roughneck, Tong Hand, and Green Hats who Defendant employed or employs as hourly employees during the three years preceding the filing of this action.

108. The illegal pay practices Defendant imposed on Plaintiff were likewise imposed on the FLSA Collective.

109. Numerous other individuals who worked with Plaintiff were required to drive to their out-of-town hitch during their regular business hours and were not properly compensated for all hours worked as required by the FLSA. Upon information and belief, the FLSA Collective are

so numerous as to make their joinder in this action impracticable.

110. Thus, Defendant imposed a uniform practice or policy on Plaintiff and the FLSA Collective regardless of any individualized factors. They all regularly worked over 40 hours a week. Any unpaid business travel to and from their hitch would result in unpaid overtime.

111. Based on his experiences and tenure with Defendant, Plaintiff is aware that Defendant's illegal practices were imposed on the FLSA Collective.

112. The FLSA Collective were not paid overtime premiums for any hours traveling to and from their home communities and their out-of-town hitches.

113. Defendant's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the FLSA Collective.

114. The FLSA Collective had to travel for business by leaving their home communities to their out-of-town man camps at the beginning of each hitch. They would return to their home communities at the end of each hitch.

115. Plaintiff's experiences are therefore typical of the experiences of the FLSA Collective.

116. The specific job titles or precise job locations of the various FLSA Collective do not prevent class or collective treatment.

117. Plaintiff has no interest contrary to, or in conflict with, the other FLSA Collective. Like each member of the proposed classes, Plaintiff has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

118. Plaintiff is similarly situated to the FLSA Collective and will prosecute this action vigorously on their behalf.

119. During the relevant time period, Plaintiff and the FLSA Collective routinely spent time traveling away from home to Defendant's job sites. Plaintiff and FLSA Collective were not compensated for their travel time at an overtime rate, even when such travel resulted in a workweek in excess of 40 hours.

120. Defendant willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 *et seq.*, as described in this Complaint in ways including, but not limited to, failing to pay Plaintiff and the FLSA Collective proper compensation, including overtime compensation, for their travel time.

121. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

122. Plaintiff Cody Hubbard, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Defendant's above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendant's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

## VIII. THIRD CAUSE OF ACTION: NMMWA OVERTIME — FAILURE TO PAY OVERTIME FOR ALL HOURS WORKED

***On Behalf of Plaintiff and the New Mexico Class***[2]

123. Plaintiff, on behalf of himself and the New Mexico Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

124. The NMMWA requires employers to pay employees one and one-half times the regular rate of pay for all hours worked in excess of forty (40) hours per workweek. New Mexico

[2] The New Mexico Class is defined in paragraph 130, below.

– N.M. Stat. Ann. § 50–4–22 *et seq*.

125. Defendant knew, or showed reckless disregard for the fact, that it failed to compensate Plaintiff and the New Mexico Class proper overtime wages.

126. In spite of such knowledge, Defendant willfully withheld and failed to pay the overtime wages to which Plaintiff and the New Mexico Class are entitled.

127. Defendant's conduct and practice, as described above, has been and is willful, intentional, unreasonable, arbitrary and in bad faith.

128. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiff and all those similarly situated for unpaid overtime wages, liquidated damages, prejudgment interest, civil penalties and costs, including reasonable attorney's fees as provided by the NMMWA.

129. Alternatively, should the Court find that Defendant acted in good faith in failing to pay Plaintiff and all those similarly situated as provided by the NMMWA, Plaintiff and all those similarly situated are entitled to an award of prejudgment interest at the applicable legal rate.

130. Because these employees are similarly situated to Plaintiff and are owed overtime for the same reasons, the proposed New Mexico Class is defined as follows:

> All Operators, Snubbing Operator, Lead Hand, Ground Hand, Basket Hand, Roughneck, Tong Hand, and Green Hats employed by Consolidated Wellsite Services, LLC in New Mexico within the last three years.

131. Defendant's actions, policies, and practices described herein violate the NMMWA's overtime pay provisions by regularly and repeatedly failing to compensate Plaintiff and the New Mexico Class at the required overtime rate for all overtime hours worked.

132. As the direct and proximate result of Defendant's unlawful conduct, Plaintiff and the New Mexico Class have suffered and will continue to suffer a loss of income and other

damages. Plaintiff and the New Mexico Class seek damages in the amount of their unpaid overtime wages, liquidated damages, interest, reasonable attorneys' fees and costs pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(2), and/or 23(c)(4), and such other legal and equitable relief as the Court deems just and proper.

133. At all times relevant to this action, Plaintiff, and the New Mexico Class were employed by Defendant.

134. Plaintiff brings this claim under the New Mexico Wage Laws as a Fed. R. Civ. Pro. Rule 23 class action.

135. The same policy that caused Plaintiff to be shorted on his overtime pay caused the New Mexico Class to be shorted on their overtime pay as well.

136. While the precise job duties performed by the New Mexico Class might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

137. Nor do any differences in job duties matter for determining whether Defendant's policy of failing to pay overtime is legal.

138. The members of the New Mexico Class are all entitled to overtime after working over forty (40) hours in a week, and the overtime they are entitled to must be calculated in a manner consistent with the regular rate requirements of the FLSA. 29 U.S.C. § 216(b).

139. The members of the New Mexico Class are all entitled to overtime after working over forty (40) hours in a week, and the overtime they are entitled to must be calculated in a manner consistent with the regular rate requirements of the NMMWA.

140. Defendant employed numerous Snubbers like Plaintiff in New Mexico in the last three (3) years.

141. Most questions of fact and law applicable to the New Mexico Class can be resolved on a class wide basis utilizing representative evidence.

142. Defendant exercised its pay practices at issue in this case on the basis of established policies applicable to the New Mexico Class.

143. Defendant's policies either comply with the NMMWA, or they do not, and this decision can be made on a class-wide basis.

144. Defendant's payroll and time-keeping records permit accurate calculation of damages with respect to each member of the New Mexico Class.

145. Absent a class action, many members of New Mexico Class likely will not obtain redress of their damages and Defendant will retain the proceeds of their violations of state law.

146. Individual litigation would be unduly burdensome to the judicial system.

147. The questions of law and fact common to the New Mexico Class predominate over any questions affecting solely individual New Mexico Class members. Among the common questions of law and fact are:

a. Whether the New Mexico Class were exempt from overtime;

b. Whether the New Mexico Class were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of forty (40) in a workweek;

c. Whether Defendant's decision to not pay overtime to the New Mexico Class was made in good faith; and

d. Whether Defendant's violation of the NMMWA was willful.

148. As the class representative, Plaintiff's claims are typical of the claims of the New Mexico Class he seeks to represent.

149. As the class representative, Plaintiff and the New Mexico Class have sustained

damages arising out of Defendant's illegal and uniform employment policy.

150. The class representative, Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

151. Although the issue of damage may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

152. Defendant owes Plaintiff, and the New Mexico Class all unpaid compensation for hours worked in excess of forty (40) in a workweek. Because Defendant knew, or showed reckless disregard for whether, its pay practices violated the NMMWA, Defendant is liable for these unpaid overtime wages for the entire period of each employee's employment.

153. Defendant also owes Plaintiff, and the New Mexico Class an amount two times the unpaid overtime wages as liquidated/treble damages.

154. Plaintiff and the New Mexico Class are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

155. Defendant maintains a uniform, company-wide policy and practice of paying the New Mexico Class a day rate with no overtime, and such failure was willful in nature, and not the result of a good faith mistake.

156. Defendant's failure to pay overtime to the New Mexico Class is in violation of the New Mexico – N.M. Stat. Ann. § 50–4–22 *et seq.* such that a common violation may be established on a class-wide basis.

157. Defendant's failure to compensate for all hours worked, including travel time, pre-shift meetings, post-shift waiting time, and donning and doffing activities, was not the result of

isolated incidents, but rather the product of a uniform policy and practice applied to the New Mexico Class across job sites.

158. Defendant knew or showed reckless disregard for the fact that such time constituted compensable work under the FLSA.

159. Numerosity: the New Mexico Class members are so numerous and geographically dispersed that joinder of all members is impracticable.

160. All members of the New Mexico Class are ascertainable by reference to objective criteria, as Defendant has access to addresses and other contact information that can be used for notice purposes.

161. Typicality: Plaintiff's claims are typical of other members of the New Mexico Class because all of the claims arise from the same course of conduct by Defendant: failure to pay the New Mexico Class members for overtime.

162. Adequacy of Representation: Plaintiff is an adequate class representative because his interests do not conflict with the interests of the New Mexico Class members whom he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the New Mexico Class and have the financial resources to do so. The New Mexico Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

163. Superiority of Class Action: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

164. To the extent not all issues or claims, including the amount of damages, can be

resolved on a class-wide basis, Plaintiff invokes Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

## IX. FOURTH CAUSE OF ACTION: NMMWA — FAILURE TO PAY OVERTIME AT THE PROPER RATE

**On Behalf of Plaintiff and the New Mexico Class**

165. Plaintiff hereby repeats, realleges, and incorporates by reference each of the foregoing allegations as if fully set forth herein.

166. The New Mexico Minimum Wage Act requires employers to pay employees one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) in a workweek. N.M. Stat. Ann. § 50-4-22.

167. The "regular rate" under the NMMWA includes all remuneration for employment, except for limited statutory exclusions.

168. During the relevant period, Defendant paid Plaintiff and the New Mexico Class additional compensation in the form of a daily bonus paid pursuant to predetermined, objective criteria.

169. This bonus was nondiscretionary because it was earned automatically when specific conditions were met and was not subject to individualized managerial discretion.

170. As such, the bonus was required to be included in the regular rate of pay for purposes of calculating overtime compensation.

171. Defendant, however, systematically excluded this nondiscretionary bonus from the regular rate when calculating overtime wages.

172. As a result, Defendant paid overtime compensation at rates lower than those required under the NMMWA.

173. Defendant's exclusion of nondiscretionary bonuses from the regular rate was carried out pursuant to a uniform and company-wide policy and practice.

174. Defendant knew, or showed reckless disregard for the fact, that such compensation must be included in the regular rate under applicable law.

175. As a direct and proximate result of Defendant's unlawful pay practices, Plaintiff and the New Mexico Class were underpaid overtime compensation throughout the relevant period.

176. Plaintiff and the New Mexico Class are entitled to recover all unpaid overtime wages, liquidated damages, statutory penalties, interest, and reasonable attorneys' fees and costs as provided under the NMMWA.

## X. CLASS ACTION ALLEGATIONS

177. Class Definitions: Plaintiff brings this action individually and on behalf of other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(2), and/or 23(c)(4), Plaintiff seeks certification of the foregoing classes and subclasses, defined as follows:

> All Operator, Snubbing Operator, Lead Hand, Ground Hand, Basket Hand, Roughneck, Tong Hand, and Green Hats employed by Consolidated Wellsite Services, LLC in New Mexico within the last three years (New Mexico Class).

178. Excluded from the New Mexico Class are the Court and its officers, employees, and relatives; Defendant and its subsidiaries, officers, and directors; and governmental entities.

179. Numerosity: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Defendant employs hundreds of similarly situated individuals across the United States.

180. All members of the Class are ascertainable by reference to objective criteria, as

Defendant has access to addresses and other contact information for Class members that can be used for notice purposes.

181. Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Common questions include:

a. Did Defendant act in bad faith?

b. Did Defendant engage in fraudulent concealment?

c. Did Defendant's conduct violate state wage payment statutes?

182. Typicality: Plaintiff's claims are typical of other members of the Class because all of the claims arise from the same course of conduct by Defendant, failure to pay for drive time, and are based on the same legal theories.

183. Adequacy of Representation: Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class members whom he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

184. Superiority of Class Action: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

185. To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiff invokes Federal Rule of Civil Procedure 23(c)(4),

reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

## XI. JURY DEMAND

186. Plaintiff, individually and on behalf of all others similarly situated hereby demands trial by jury.

## XII. REQUEST FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

A. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative, and appoint Plaintiff's counsel as Class Counsel;

B. That the Court award Plaintiff and the Class or Subclass(es) compensatory, consequential, general, nominal, and statutory (along with any other damages available at law) to the extent permitted by law and in an amount to be determined at trial;

C. That the Court issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;

D. That the Court award Plaintiff and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

E. That the Court award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

F. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses as provided by law;

G. That the Court award pre-and post-judgment interest at the maximum legal rate;

and

H. That the Court grant all such other relief as it deems just and proper.

Respectfully submitted,

**TRAN LAW FIRM**

*/s/ Trang Q. Tran*

TRANG Q. TRAN
Federal I.D: 20361
Texas Bar No. 00795787
800 Town & Country Blvd., Suite 500,
Houston, Texas, 77024
Ph.: (713) 223 – 8855
trang@tranlf.com
service@tranlf.com

**ATTORNEY FOR PLAINTIFF, individually and on behalf of similarly situated individuals**